**HOWARD HALL COMPANY, Inc.,**
**Plaintiff,**

v.

**UNITED STATES of America, and Interstate Commerce Commission,**
**Defendants,**

**Cooper Transfer Company, Inc.,**
**Intervening Defendant.**

**Civ. A. No. 70-626.**

United States District Court,
N. D. Alabama, M. D.

Oct. 15, 1971.

da and Thomasville, Georgia. The application[2] indicated that Cooper intended to "tack" the authority sought with its then existing routes to provide direct service between Jacksonville and other points served by Cooper in Alabama, Florida, Georgia and Louisiana. Eight carriers, including Howard Hall Company, Inc., the plaintiff (hereinafter referred to as Hall), filed protests against the application. Hall protested that its service between Jacksonville and Montgomery would be jeopardized if Cooper were allowed to tack its Montgomery-Thomasville Route with the proposed Jacksonville-Thomasville Route.

John P. Carlton, of Bishop & Carlton, Birmingham, Ala., for plaintiff.

Wayman G. Sherrer, U. S. Atty., and Henry I. Frohsin, Asst. U. S. Atty., Birmingham, Ala., John H. D. Wigger, Antitrust Div., U. S. Dept. of Justice, A. Alvis Layne, Washington, D. C., J. Douglas Harris, Montgomey, Ala., Fritz R. Kahn, Gen. Counsel, and Arthur M. Toback, Atty., I. C. C., Washington, D. C., for defendants.

Before RIVES, Circuit Judge, and GROOMS and POINTER, District Judges.

## MEMORANDUM OF OPINION AND ORDER

POINTER, District Judge.

Cooper-Transfer Co., Inc. (hereinafter referred to as Cooper) applied for a certificate of public convenience and necessity under Section 207 of the Interstate Commerce Act[1] to transport general commodities between Jacksonville, Flori-

The ICC acting under Rule 247(e) (3) of the Commission's Rules of Practice,[3] on November 27, 1968, ordered the application handled by modified procedure,[4] whereby parties introduce evidence in the form of verified affidavits.[5] A trial type proceeding is held only to resolve disputed factual issues.[6] As the modified procedure allows a party to present any evidence in the nature of direct examination, the gist of an oral hearing is cross-examination and the confrontation of parties and witnesses. To obtain an oral hearing a party must specify the name of any witness it wishes to testify and the subject matter of the desired cross examination along with any other basis for the request.[7]

On May 8, 1959, Review Board No. 1 granted the application as filed. On July 11, 1969, Hall filed a petition for reconsideration or, in the alternative, for a hearing *de novo*, requesting an oral hearing before the appropriate joint

---

1. 49 U.S.C. Sec. 307.

2. Docketed as Cooper Transfer Co., Inc. Extension-Jacksonville, Fla., MC–55889 (Sub. No. 30). The application contained limited exceptions not material to this proceeding.

3. 49 C.F.R. Sec. 1100.247(e) (3).

4. The regulations controlling modified procedure are found generally at 49

C.F.R. Sec. 1100.45–54. See also the "General Policy Statement Concerning Motor Carrier Licensing Procedures" published on May 3, 1966 by the ICC following 49 C.F.R. Sec. 1100.247.

5. 49 C.F.R., Sec. 1100.50.

6. 49 C.F.R., Sec. 1100.53.

7. 49 C.F.R., Sec. 1100.53(a).

board[8] for the first time.[9] Upon reconsideration, Division 1 of the Commission, acting as an Appellate Division denied the relief sought by Hall by an order on October 3, 1969, although certain tacking restrictions sought by other protestants were granted.[10] Hall again sought reconsideration on November 24, 1969; the petition was denied on February 27, 1970, making the matter administratively final and ripe for judicial review.

Hall filed this action on August 17, 1970, pursuant to 49 U.S.C. Sec. 17(9) to enjoin and set aside the commission's final order of February 27, 1970. On its motion, Cooper was allowed to intervene and join the original deefndants, the United States and the ICC. This Court has jurisdiction under 28 U.S.C. Sec. 1336 (a) and the matter was heard by a three-judge panel pursuant to 28 U.S.C. Secs. 2284, 2325.

■ Having unique experience with the limited scope of review in this court,[11] Hall does not seek to re-try the issue of whether a public need exists for Jacksonville-Thomasville service. Hall instead makes a three-pronged attack, asserting:

(1) Hall was denied its right to cross examine adverse witnesses under modified procedure.

(2) The ICC was required to submit the application to a joint board for initial determination.

(3) The ICC wrongfully imposed upon Hall too great a burden of proof.

I

## CROSS EXAMINATION OF ADVERSE WITNESSES UNDER THE ICC'S MODIFIED PROCEDURE

Rule 53 provides for an oral hearing and cross-examination only on limited issues and after compliance with a specific procedure:

Modified procedure; hearings.

(a) *Request for cross examination or other hearing.* If cross examination of any witness is desired the name of the witness and the subject matter of the desired cross examination shall, together with any other request for oral hearing, including the basis therefor, be stated at the end of defendant's statement or complainant's statement in reply as the case may be. Unless material facts are in dispute, oral hearing will not be held for the sole purpose of cross examination.

(b) *Hearing issues limited.* The order setting the proceedings for oral hearing, if hearing is deemed necessary, will specify the matters upon which the parties are not in agreement and respecting which oral evidence is to be introduced.

49 C.F.R. Sec. 1100.53

■ Hall asserts that due process of law, as applied to administrative agencies by Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950),[12] requires that an oral hearing must be held in matters of this nature. This contention was rejected by a three-judge

---

8. Joint Board No. 64, composed of a representative from Georgia and a representative from Florida pursuant to 49 U.S.C. Sec. 305.

9. Hall had previously made a *general* demand for an oral hearing in its original protest, asserting that an oral hearing would be the most expeditious and economical method for handling the case. At no time had Hall complied with the requirements of 49 C.F.R. Sec. 1100.53 (a).

10. Cooper was prohibited from shipping from Jacksonville, through Thomasville to: Dothan, Alabama; Columbus, Georgia; New Orleans, Louisiana; or any

point in Florida. No tacking restriction was made regarding services to Montgomery, Alabama.

11. Howard Hall Co. v. United States, 315 U.S. 495, 62 S.Ct. 732, 86 L.Ed. 986 (1942) and its companion case, United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942) state the general rule that a reviewing court will not substitute its independent judgment for that of the Commission's expert determination in considering a matter of appeal.

12. As cited in Kingpac, Inc., Investigation of Operations, 103 M.C.C. 318 (1966).

court in *Allied Van Lines Co. v. United States,* 303 F.Supp. 742 (C.D.Calif.1969), a case similar to this, where the court said:

> \* \* \* *Wong Yang Sung* cannot be read to require a full dress hearing in all cases, since it merely holds that the Administrative Procedure Act in and of itself does not require oral hearings, such hearings being compulsory only when other statutes make them mandatory. \* \* \*

> \* \* \* Under the applicable statute here before us, Section 207 of the Interstate Commerce Act, 49 U.S.C. § 307, there is no compulsory requirement that an oral hearing be held.

Moreover, Section 7(c) of the Administrative Procedure Act[13] recognizes that an administrative agency may adopt procedures for receiving evidence in documentary form. There appears to be no doubt that decisions based solely upon written presentations are within the limits of procedural due process where proper safeguards exist.

██ The proper safeguards for procedural due process exist under the I. C. C. modified procedure, which provides for a specific method of obtaining an oral hearing where material facts are in dispute.[14] Hall did not dispute any facts which Cooper asserted; indeed, Hall concedes that the Commission's basic grant of the Jacksonville-Thomasville route "cannot be termed 'irrational' as a matter of law." The verified statements filed by Hall did not undertake to controvert or deny the information contained in Cooper's affidavits. The affidavits filed

by Hall failed to create any dispute as to material facts.

Moreover, Hall has made no attempt to specifically comply with Rule 53. Hall rested without specifying either the names of the witnesses it sought to call or the subject matter of the testimony it desired to introduce. A specific request, which should have been made after all affidavits were submitted, was never made. At the time the Review Board took the case under submission, it was a classic example of a case which could be handled by modified procedure.[15] There was no conflict in the substance of any of the verified statements and no party had requested cross-examination of any opposing affiant.[16] It would be grossly unfair to allow Hall to defeat an adverse ruling by properly requesting an oral hearing for the first time after a decision has been entered in Cooper's favor.[17]

Hall simply has no absolute right to an oral hearing (see *Kingpac, supra*), and has cited no cases holding that an application for a certificate of public necessity and convenience requires an oral hearing. The ICC has properly decided that, due to its heavy workload with applications of this type, some of the applications should be handled in an abbreviated fashion which allows all parties ample opportunity to present all their evidence, including rebuttal, in writing.

## II

## SUBMISSION TO THE JOINT BOARD FOR INITIAL DETERMINATION

 Hall contends that Cooper's application should have been initially heard

---

13. 5 U.S.C. Sec. 556(d).

14. Where material facts are not in dispute, there can be no harm in deciding upon an application solely on the basis of written evidence, where, as here, all parties have an opportunity to submit any evidence.

15. Plaintiff's brief outlines the increased use of modified procedure on pp. 17–18.

16. The court must, while striving to eliminate any prejudice in the handling of cases by modified procedure, consider

the practicalities, within limits, of handling applications by an abbreviated method.

17. It is also significant to note that Hall made no attempt to utilize the Commission's discovery procedures (49 C.F.R. Secs. 1100.56–.67) by seeking to take depositions of or submit interrogatories to adverse witnesses—procedures which could conceivably and easily give Hall the opportunity for the confrontation and cross-examination now being sought, and at the same time possibly obviate any necessity for an oral hearing.

by a joint board composed of a representative from Florida and a representative of Georgia pursuant to Section 205 (a) of the Interstate Commerce Act.[18]

Hall asserts that there are only two states involved for the purpose of the statute, since the application on its face only deals with service in Florida and Georgia.[19] Hall relies on the recent case of Jones Truck Lines, Inc., v. United States, 321 F.Supp. 821 (W.D.Ark.1971), which Hall asserts as holding that the Commission has a statutory duty to refer an application involving not more than three states to a joint board. However, the Jones case is factually distinguishable from the case at bar in that the plaintiff in Jones protested the original order of the Commission assigning that case for modified procedure.[20] In the instant case, Hall did not complain of the modified procedure until after an adverse decision had been rendered.

The court finds that the assignment of applications to a joint board is a procedural matter rather than one of jurisdiction. De Camp Bus Lines v. United States, 185 F.Supp. 336 (D.N.J. 1960); United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952). Hall waived any right it had to insist upon a joint board

hearing by participating in the modified procedure without complaining. Travel and Tour Service v. United States, 302 F.Supp. 188 (E.D.Wis.1969).

## III
## BURDEN OF PROOF

Hall asserts that the decision of the commission not to impose a tacking restriction between Thomasville and Montgomery is irrational. In actuality, Hall is picking on the use of the word "conclusively" in the Board's report of May 8, 1969, on page 43:

"In an application proceeding of this type, the authority being granted will not be restricted against tacking with the applicant's existing operating rights, notwithstanding that no specific public need has been shown for such overhead operations, unless protesting carriers conclusively demonstrate that their operations would otherwise be materially adversely affected. See Eldon Miller Inc., Extension—Liquid Chemicals, 73 C.C.C. 538, 540, and Rawlings Extension—Emporia, 78 M.C.C. 636, 637."

■ However, this is a general statement and a full reading of all documents presented to the Court does not indicate that the Commission held Hall to any such burden.[21]

18. 49 U.S.C. Sec. 305(a) provides in part: "(a) The Commission shall, when operations of motor carriers or brokers conducted or proposed to be conducted involve not more than three States, and the Commission may, in its discretion, when operations of motor carriers or brokers conducted or proposed to be conducted involve more than three states, refer to a joint board for appropriate proceedings thereon, any of the following matters arising in the administration of this chapter with respect to such operations as to which a hearing is required or in the judgment of the Commission is desirable: Applications for certificates, permits, or licenses."

19. Hall did have pre-existing authority to operate in parts of Alabama, Mississippi, and Louisiana and sought to tack the proposed route to those it already had, but Hall asserts this is immaterial under the doctrine of Blue Ridge Transfer Co., Inc., Extension-Sumpter, of So.

Car., 84 M.C.C. 239. The court finds it unnecessary to determine whether the Cooper application falls within the mandatory section of the statute, but for the purpose of this opinion, we will assume that the application is within this part of Sec. 205(a). The Court is apprehensive of the ICC policy of determining the number of states involved by an application by the primary service sought in the application. This very suit was brought primarily because a tacking restriction into another state was not granted. The test appears to be one of form rather than substance.

20. The Jones case also clearly involved operations in only one state and there were material factual issues to be Resolved.

21. On page 43 of the same report, the Commissioner used the word "convincingly": "Protestant Howard Hall desires the imposition of a restriction designed

■ The real issue presented here is who has the burden of proof with respect to the imposition of tacking restrictions. Hall properly alleges that an applicant must bear the burden of proof with regard to the primary route it seeks; Hall also concedes that Cooper carried this burden.[22]

■■ The case of Warren Transport, Inc. Extension—Dubuque to North Dakota, 98 M.C.C. 761 points out two basic principles concerning the tacking of common carrier authority: First, that the tacking of two separate unrestricted irregular-route authorities is permissible as a basic right incidental to the holding of such authorities, which right does not come into existence by virtue of any showing of a need for through service, but rather as a by-product of the manner in which motor carrier operations are physically conducted on an interchange basis between separate carriers; and secondly, that although the Commission may impose restrictions on authority to prohibit such authority from being tacked with another in order to perform a through service, such restrictions will not be imposed unless the existing carriers establish that they will be materially adversely affected by such tacking operation. See also: Eldon Miller, Inc., Extension—Liquid Chemicals, 73 M.C.C. 538; Klipsak Hauling Co., Extension—St. Joseph, Mo., 111 M.C.C. 295 (1970), Ruan Transport Corp., Extension—Ames, Iowa, 110 M.C.C. 389 (1969).

■ A mere showing that tacking possibilities exist and that an applicant may avail itself of them is not a sufficient showing by a protestant to warrant a restriction against tacking. Since Hall presented no specific evidence

to protect its operations between Montgomery and Jacksonville, but has submitted no specific evidence as to the amount of traffic it transports between these points. Accordingly, the requested restriction should not be imposed inasmuch as it has not been convincingly shown that a grant of authority herein without such restriction will have a material adverse effect in Howard Hall's operations."

to show how its operation would be materially and adversely affected by the lack of a tacking restriction and no evidence to rebut that offered by Cooper in the form of affidavits from two Montgomery warehouses that complained of undue delays in shipping to Jacksonville, there was no ground for the Commission to grant a restriction.[23]

The final order of the Commission granted the proposed authority to Cooper without restricting tacking to Montgomery is affirmed.

22. Plaintiff's brief, p. 24.

23. The burden of proof with regard to tacking is peculiarly appropriate. A protesting party must prove his own damage as opposed to having an applicant prove that a protestant will not be harmed. It would seem that the proper policy would be to grant unrestricted routes in order to promote economy and efficiency.