**NATIONWIDE CARRIERS, INC.**
**Plaintiff,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants.**

**No. 4-73-Civ. 447.**

United States District Court,
D. Minnesota,
Fourth Division.

July 5, 1974.

Arlyn L. Westergren, of Stern, Harris, Feldman, Becker & Thompson, P. C., Omaha, Neb., for plaintiff.

Robert G. Renner, U. S. Atty., and Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., for defendant United States.

Fritz R. Kahn, Gen. Counsel, and Hugh W. Cuthbertson, Atty., I. C. C., Washington, D. C., for defendant Interstate Commerce Commission.

Before HEANEY, Circuit Judge, and DEVITT and LARSON, District Judges.

## MEMORANDUM ORDER

LARSON, District Judge.

This is an action to set aside, vacate, and annul an Order of the Interstate Commerce Commission (hereinafter the Commission) denying the application of Nationwide Carriers, Inc. (hereinafter Nationwide) to convert a contract carrier permit to a common carrier certificate. Docket No. MC–117940 (Sub-No. 44), Nationwide Carriers, Inc., Extension—Floor Coverings Conversion.

Nationwide is a Minnesota corporation located in Maple Plain, Minnesota.

It operates as both a common carrier and a contract carrier by motor vehicle of property in interstate commerce, pursuant to various authorizations granted by the Commission. As pertinent here, Nationwide holds a permit issued by the Commission in Docket No. MC–114789 (Sub-No. 16) under which it is restricted to contract carrier service for two Minneapolis based shippers.

On March 8, 1971, Nationwide filed an application with the Commission pursuant to § 207(a) of the Interstate Commerce Act, 49 U.S.C. § 307(a), to convert the above mentioned permit to a certificate of public convenience and necessity. Obtention of the certificate would then enable Nationwide to hold itself out to serve an unlimited number of shippers within the area and scope of its authorization.[1]

A hearing was held on the application by an administrative law judge (formerly entitled hearing examiner) on October 15, 1971, in St. Paul, Minnesota. Testimony in support of the conversion was presented by Nationwide's president and its two contracting shippers. Six protestants, all common carriers, opposed the application.[2]

On August 8, 1972, the administrative law judge served his report and recommended order.[3] Finding insufficient evidence of shipper need, he concluded that the present and future public convenience and necessity for Nationwide's operating as a common carrier had not

---

1. The common carrier authorization sought by Nationwide is identical in subject matter and area of operation to its present contract carrier permit. Under this authorization, Nationwide may transport floor coverings, stair treads, wall tile, counter top coverings, and mouldings, and related installation, maintenance, and repair materials and supplies from certain designated points in Connecticut, Massachusetts, Maine, New Jersey, New York, Ohio, and Illinois to any points in Iowa, Minnesota, North Dakota, South Dakota, and Wisconsin.

2. The protestants were Ace Lines, Inc., Consolidated Freightways Corporation of Delaware, H & W Motor Express Company, Midwest Emery Freight Systems, Inc., CW

Transport, Inc., and Anderson Trucking Service, Inc. Midwest Emery was denied participation in the hearing by the administrative law judge for failure to comply with one of the Commission's procedural rules. It subsequently was permitted to participate and appear in all future proceedings by Order of the Commission, Division 1, January 6, 1972, and filed a posthearing statement in opposition that was responded to by Nationwide.

3. The administrative law judge who heard the case retired before a report had been prepared. The case was then transferred to another administrative law judge for preparation of the recommended report and order.

been shown. He, therefore, recommended denial of the application.

This recommendation was affirmed on February 2, 1973, by the Commission, Review Board Number 2. A petition for reconsideration was denied on June 27, 1973, by the Commission, Division 1, acting as an appellate division. Having exhausted its administrative remedies, Nationwide then brought this action to review the denial of its application. This Court's jurisdiction is founded on 28 U.S.C. §§ 1336, 2284, and 2321–2325.

Our review is limited to ascertaining whether the Commission's decision was rational and based on substantial evidence. General Mills, Inc. v. United States, 364 F.Supp. 1278, 1282–1283 (D. Minn.1973); see also Consolo v. Federal Maritime Commission, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Twin City Freight, Inc. v. United States, 360 F. Supp. 709, 712 (D.Minn.1972); Prinsburg Coop Fertilizer Co. v. United States, 338 F.Supp. 1059, 1060 (D.Minn. 1971), aff'd 405 U.S. 906, 92 S.Ct. 955, 30 L.Ed.2d 778 (1972). On the record before us, we conclude that it was and must be affirmed.

Under § 203(a)(15) of the Act, 49 U. S.C. § 303(a)(15), a contract carrier is one that operates under continuing contracts with one or a limited number of persons either by furnishing motor vehicles to the exclusive use of each person or by furnishing services to meet the distinctive needs of each person. Under § 203(a)(14), 49 U.S.C. § 303(a)(14), a common carrier is one that holds itself out to the public generally, without these restrictions as to quantity or quality of service imposed upon contract carriers. See E. A. Gallagher & Sons, et al. v. Cleveland General Transport Co., Inc., 98 M.C.C. 356, 359 (1965).

In Connell Transport Co., Inc., Conversion Application, 95 M.C.C. 312, 318–319 (1964), the Commission established the following requirements for granting conversion from contract to common carrier status: the applicant must submit a detailed statement of past lawful operations under its contract permit authority; it should offer to surrender the unused portion of its authority; and it should offer shipper testimony demonstrating a need for its services as a common carrier, rather than as a contract carrier. Additionally, as in all attempts to acquire common carrier certification, a showing of public convenience and necessity must be made. Schilli Motor Lines, Inc., Conversion Application, 105 M.C.C. 90, 94–95 (1967); Major Conversion Application, 100 M.C.C. 410 (1966); see also Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945); Pan-American Bus Lines Operation, 1 M. C.C. 190 (1936).

The testimony in the administrative hearing showed that during the first few years of operation under its contract permit, Nationwide dedicated vehicles exclusively to the uses of its two shippers. Thereafter, beginning in late 1969 or early 1970, Nationwide discontinued this practice and instead assigned to its shippers vehicles drawn from a pool of units terminating in the area of the origin points of the shipments.

This resulted in a much larger number of vehicles being available and more efficient and superior service to that formerly provided under the exclusive dedication practice. Both shippers testified that they found the new method favorable and desired continuation of this kind of service, whether or not the conversion be granted. No other testimony of supporting shippers was presented.

The administrative law judge determined that Nationwide failed to satisfactorily demonstrate shipper need.[4]

---

4. The administrative law judge also based his determination on Nationwide's failure to offer for surrender the unused portion of its contract carrier authority. Defendants now concede that this defect was cured by Nationwide's formal offer of surrender follow-

His report and recommended order read, in pertinent part, as follows:

"* * * [Nationwide] has not offered any testimony demonstrating any need for its services as a common rather than a contract carrier. All that has been shown is that applicant has changed the precise manner of serving its two contracting shippers from that originally intended, and that the shippers do not care whether applicant serves them as a common or contract carrier. Significantly, no shipper other than those presently served were shown to even desire, much less need applicant's proposed service. * * * "

He then concluded that the expressed desire by the supporting shippers for continuation of Nationwide's present service did not meet the requirement of public convenience and necessity.

Nationwide contends that this determination, affirmed by the Commission, misapplies *Connell* and progeny. Its position is that the denial of its application was based solely upon the inability, or failure, of its supporting shippers to distinguish between contract and common carrier service and their apparent indifference whether Nationwide continued operating under its present permit or was granted a certificate. Nationwide contends that it is immaterial that supporting shippers cannot make the formal distinction between the two kinds of licenses, provided they exhibit a qualitative preference for common carrier service. Perkins Furniture Transport, Inc. v. United States, 333 F.Supp. 879, 884–885 (S.D.Ind.1971), aff'g sub nom. Ferree Moving and Storage, Inc., Conversion Application, 110 M.C.C. 375, 378 (1969).

Nationwide maintains that the kind of service that its shippers said they favored, non-dedication of exclusive vehicles, is in the nature of common, rather than contract, carriage. Thus, it argues

that the determination of insufficient showing of shipper need for common carrier service was erroneous.

*Perkins Furniture Transport* does not support Nationwide's position. The Court in *Perkins* affirmed the Commission's conversion of a contract carrier permit to a common carrier certificate, even though the supporting shippers did not, or could not, precisely identify the statutory designation (common or contract carriage) of the kind of service they needed.

*Perkins* recognized, as Nationwide argues here, that failure to make such a distinction may be disregarded by the Commission in assessing the overall evidence before it. 333 F.Supp. 879, 885. But that does not necessarily mean that an application for conversion must be granted because shippers testify as to their need for continuation of service that has deviated from its original contract carriage nature. The Court in *Perkins* emphasized that casting aside the "private feelings" of the shippers, the Commission must look to the "total effect" of the evidence in making its determination. *Ibid.*

The administrative law judge here correctly summarized the evidence as demonstrating an evolution by Nationwide from its original contract carrier service to departure from exclusive dedication of vehicles to the uses of its respective shippers. No evidence was offered nor argument presented in the hearing regarding whether Nationwide satisfied the alternative criterion of contract carriage, the furnishing of specialized service to its shippers. The administrative law judge observed, and we agree, that the record is barren on this subject. Therefore, the record does not establish that the kind of service that the supporting shippers said they favored was in fact common carrier in nature.[5]

ing the administrative law judge's decision, and hence this is no longer an issue in the case. Joint Brief of the United States of America and the Interstate Commerce Commission, p. 15.

5. If Nationwide is not furnishing specialized service to its shippers, and having admitted non-dedication of exclusive vehicles, it may be said to be engaging in unauthorized operations and be subject to potential sanctions

Even if we were to assume, without any facts in the record or findings by the Commission, that the nature of service now being provided by Nationwide, and favored by its shippers, is common carriage in character, the Commission's determination must still be upheld. The evidence as a whole might rationally have led to the conclusion reached by the Commission.

To be entitled to a certificate to operate as a common carrier, an applicant must make a convincing affirmative showing that such issuance would be in the public convenience and necessity. Lester C. Newton Trucking Co. v. United States, 264 F.Supp. 869, 885 (D.Del. 1967), aff'd per curiam 389 U.S. 30, 88 S.Ct. 108, 19 L.Ed.2d 29; Quickie Transport Co. v. United States, 169 F. Supp. 826, 828 (D.Minn.1959), aff'd per curiam 361 U.S. 36, 80 S.Ct. 140, 4 L. Ed.2d 111; Hudson Transit Lines v. United States, 82 F.Supp. 153, 157 (S. D.N.Y.1948), aff'd per curiam 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485 (1949).

Merely demonstrating a willingness of some shippers to utilize the applicant's proposed service or a preference on their part for such service does not necessarily suffice. Roadway Express, Inc. v. United States, 213 F.Supp. 868 (D.Del. 1963), aff'd per curiam 375 U.S. 12, 84 S.Ct. 53, 11 L.Ed.2d 38. The Commission instead, as *Perkins* recognizes, must look to all of the circumstances in deciding whether common carrier certification is warranted. An important ingredient in the determination of shipper need, and hence public convenience and necessity, is the adequacy of existing carriers to meet the present and future needs of the shipping public. *See, e. g.,* Lester C. Newton Trucking Co. v. United States, *supra,* 264 F.Supp. 885; Wycoff v. United States, 240 F. Supp. 304, 312 (D.Utah 1965); Colora-

do-Arizona-California Express, Inc. v. United States, 224 F.Supp. 894, 896–897 (D.Colo.1963); W. T. Mayfield Sons Trucking Co. v. United States, 211 F. Supp. 619, 627 (N.D.Ga.1962); Hudson Transit Lines v. United States, *supra,* 82 F.Supp. 157; *see also* Pan-American Bus Lines Operation, *supra,* 203.

The administrative law judge did not make any specific findings or conclusion regarding the operations of existing common carriers who would be in competition with Nationwide's proposed service. He said that because the testimony adduced in support of the application failed to satisfy the requirement of shipper need, "there is no need to burden this report with any discussion of protestants' operations."

We do not consider this absence of expressly verbalized findings or conclusions to be fatal. *See* Roadway Express, Inc. v. United States, *supra,* 213 F.Supp. 878–879. Implicit in the conclusion of lack of shipper need was a determination that the testimony in Nationwide's behalf did not demonstrate the present or potential inadequacies of other carriers to provide the service sought to be furnished by Nationwide. From the record, it was rational to conclude that the expression by the two supporting shippers of their desire for continuation of Nationwide's present service was not sufficiently corroborated by evidence of inability of existing common carriers to provide such service. *See* Schilli Motor Lines, Inc., Conversion Application, *supra,* 94–95.

The contrary, and perhaps equally rational, conclusion might have been reached. But we may not substitute our judgment for that of the Commission, which has the expertise to make this determination from the facts before it. Twin City Freight, Inc. v. United States, *supra,* 360 F.Supp. 712; *see also*

---

by the Commission. *See* Contract Cargo Company—Extension of Operations, 105 M. C.C. 686, 687–688, 696–698 (1967); Denny Motor Freight, Inc., Extension-Tractors from Louisville, Ky., 103 M.C.C. 626, 630 (1967); E. A. Gallagher & Sons, et al. v. Cleveland General Transport Co., Inc., *supra,*

359–360. Such a determination cannot be made in the absence of evidence or an investigative finding under § 204(c) of the Act, 49 U.S.C. § 304(c). This is a matter not now before us and has no bearing on the outcome of the instant case.

Consolo v. Federal Maritime Commission, *supra*, 383 U.S. 620–621, 86 S.Ct. 1018; United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38 (1945); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934).

In sum, from the myriad of considerations within its discretion, the Commission could reasonably have concluded that shipper need, and hence public convenience and necessity, was not established by Nationwide. Since the Commission's determination was rationally grounded on substantial evidence, we may not set it aside merely because we may have reached a different conclusion upon independent consideration of the evidence. United States v. Pierce Auto Freight Lines, *supra*, 327 U.S. 535–536, 66 S.Ct. 687.

Accordingly, it is ordered:

That the determination by the Commission denying Nationwide's application for conversion be, and it hereby is, affirmed.